UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                              Bankruptcy No. 16-30505
                                                                    Chapter 7
Tonya Slinger,

      Debtor.
_____/

**MEMORANDUM AND ORDER**

      This case is before the Court on the Chapter 7 Trustee's objection to Debtor Tonya Slinger's claimed exemptions. Debtor filed a voluntary Chapter 7 bankruptcy petition and schedules and statements on October 4, 2016. On Schedule A/B, Debtor listed spousal support in the sum of $32,256 among her property.[1] Debtor claimed the full value of the spousal support as exempt under N.D.C.C. § 28-22-03.1(8)(d) on Schedule C. The Trustee objected to Debtor's claimed exemption of spousal support, asserting it is not reasonably necessary for her support or the support of her dependents. The Court held a hearing on the Trustee's objection on January 10, 2017.

**I.  Factual Findings**

      Several years before Debtor petitioned for bankruptcy relief, she and her former husband entered a Marital Termination Agreement. Ex. F. In a Judgment and Decree filed August 28, 2012, a North Dakota state court approved the terms of the parties' Marital Termination Agreement. Id. According to the Judgment and Decree, Debtor's former spouse owes Debtor $1,785 per month in child support until their older child turns 18 or graduates from high school, whichever is later. Id. at 15. At that time, the child support obligation decreases to $1,113 per month until their younger child turns 18

---

[1] Debtor added the payments she expects to receive in the future and entered this total in Schedule A/B.

                         Document      Page 2 of 10

or graduates from high school.  Id.  The Judgment and Decree also provides that Debtor's former spouse owes Debtor $1,215 in spousal support for 54 months commencing October 15, 2012.  Id. at 19.  After the 54 months elapses, spousal support increases to $1,387 per month for 18 months.  Id.  The state court observed: "The parties understand that, should child support increase or decrease, the spousal support shall be adjusted so that the first 54 payments, when added to the child support, totals $3,000.00; and the last 18 payments, when added to child support, totals $2,500.00."  Id. at 20.  Debtor explained at the hearing on the Trustee's objection that the static payment reflects her former spouse's acknowledgement of the family's fixed costs of living and his willingness to help Debtor with the expenses necessary to allow Debtor and the children to stay in the house that she could not afford without his help.

At the hearing, Debtor maintained that the support payments were necessary for her and her children.  She explained that she looked at her typical expenses from previous months in determining her listed expenses on Schedule J of her bankruptcy petition.  When questioned about her $725 expense for food and housekeeping, Debtor detailed that $25 to $30 per month is for cleaning supplies and paper products and the remainder is for food.  She testified that the family eats at home as often as possible and, because the family lives in the country, "it's hard to eat out."  The $725 monthly expense does not include $150 per month for school lunches.

The Trustee questioned Debtor about several of the transactions on her bank statements.[2]  During this series of questions, he emphasized certain charges, including those to fast food restaurants, a coffee shop, tanning salons, a liquor store and bars.

---

[2] The statements were from two different accounts for the following time periods: September 29, 2016 to November 14, 2016, and September 26, 2016 to October 21, 2016.

Debtor acknowledged that she must eat at restaurants less often to keep her expenses within her budget.

The Trustee also questioned Debtor about her $150 monthly expense for home maintenance, repair and upkeep. Debtor explained that she incurs expenses related to snow removal and maintenance of a one-acre lawn. Her roof tiles are wrecked and her deck requires regular staining. She also maintains the inside of her house which currently needs a new floor as the result of a leak. She will have to replace her furnace and water heater someday.

Debtor subscribes to basic internet service and satellite television, resulting in expenses totaling $200 per month. Her children periodically rent a pay-per-view movie. Although her satellite television subscription includes premium movie channels that cost $20 of the monthly total, Debtor asserted that this expense is reasonable because it would cost more than $20 to take her children to a movie. She does not have a landline telephone. Debtor also listed $100 in entertainment expenses.

Debtor's cell phone expense is $211 per month. This includes a $20 per month data plan for her children's tablets which Debtor maintains is the lowest data plan available. She explained that access to the internet is necessary for school. Debtor's cell phone plan is a standard plan but includes unlimited data because she uses it to work from home. Debtor's dental and medical expenses are $294 per month, which includes $105 for medical, dental and vision, $75 for prescriptions and $114 for orthodontics. Debtor stated that the divorce decree requires her former spouse to pay half of these expenses, but he does not pay his share.

Debtor and her older child both drive. Her monthly transportation expenses total $460. Of that sum, Debtor's expenses are $290, and her son's expenses are $170.

3

Debtor lives in Argusville but works in Fargo. Her son drives himself and his sister to and from school and after-school activities, saving Debtor considerable travel and time. He also drives them to his father's house for visitation one night a week and every other weekend. Additionally, he also drives to coach basketball on Saturdays.

Debtor's monthly car payment for her 2016 Nissan Rogue is $325. She purchased this vehicle a couple months before she filed for bankruptcy relief. Her last vehicle was ten years old and had mechanical problems. Debtor leased the Nissan before she petitioned for bankruptcy because she was afraid her credit rating would become worse as a consequence of the bankruptcy. She explained that her credit rating was already bad before bankruptcy, requiring her stepfather to cosign the lease for the Nissan. When asked whether she could have found a more affordable vehicle, she explained that she needs a vehicle with all-wheel drive because she is a single mother living in the country. She needs a vehicle that allows her to care for her children and get to work. She looked for a less expensive vehicle that met her needs but was unable to find one.

Debtor pays $190.24 per month to insure her car and the car her son drives. As with the medical expenses, her former spouse is obligated to pay half of the insurance expense for her son, but does not do so. Debtor testified that she cannot afford to take her husband to court to pursue collection for these expenses.

Debtor included a monthly expense of $206.55 for spousal support taxes on Schedule J. She explained that she is required to pay income tax on the spousal support she receives and that her accountant advised her to set money aside each month for taxes on the spousal support payments.

4

Although Debtor listed $150 per month for water, sewer and garbage collection, she testified that her expense is only half this amount, and Debtor amended Schedule J after the hearing to reflect this correction.

According to Debtor's 2015 income tax return, Debtor earned $25,413 through her employment and received $14,580 in alimony.  Ex. A.  Her tax return shows that she received a tax refund of $322.  Id.  She testified that she received a refund because she made less income in 2015 after attempting to start her own independent travel agency which was ultimately unsuccessful.  Debtor has not yet prepared her 2016 tax return and does not know whether she will receive a refund this year, but she anticipates having to pay taxes on the spousal support payments.

Debtor's Schedule I includes $1,215 per month in spousal support as income.  It also includes her gross income from her employment as a travel consultant of $2,239.89 per month.  Doc. 1.  She started working at her current job in April and does not expect a raise.

Debtor filed an amended Schedule J on January 11, 2017.  Doc. 16.  She reduced the expense listed for water, sewer and garbage collection from $150 to $80 consistent with her testimony at the hearing that the amount listed was erroneously overstated.  Doc. 16.  As a result, Debtor's monthly net income increased from $2.45 to $72.45 per month.  Id.  Debtor also noted an expected increase in expenses within a year after the amendment, explaining: "Student loan payment is currently in deferment anticipated payment of $200.16 per month."  Id. at 5.  Debtor owes $21,000 in student loans which have been deferred since approximately May 2016.  All of the other expenses remain unchanged from the original Schedule J.

5

## II.     Discussion

Section 541(a)(1) of the Bankruptcy Code provides that, at the commencement of a case, the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1).  The parties do not dispute that the spousal support at issue in this case is property of the bankruptcy estate.

The Code allows debtors to exempt certain property from their bankruptcy estates.  11 U.S.C. § 522(b)(1).  "'Exempt property is excluded from property of the estate available to satisfy debts.'" Nessan v. Lovald, 2012 WL 6029124, at *2 (8th Cir. Dec. 5, 2012) (quoting Benn v. Cole, 491 F.3d 811, 813 (8th Cir. 2007)).  Exemption statutes are construed liberally in favor of the debtor.  Hardy v. Fink (In re Hardy), 787 F.3d 1189, 1192 (8th Cir. 2015) (citing Wallerstedt v. Sosne, 930 F.2d 630, 631 (8th Cir. 1991)).  A party in interest may file an objection to the list of property claimed as exempt.  Fed. R. Bankr. P. 4003(b)(1).  An objecting party carries the burden of showing by a preponderance of the evidence that an exemption is not properly claimed.  Fed. R. Bankr. P. 4003(c); In re A'Hearn, 2011 WL 4704235, at *4 (Bankr. N.D. Iowa Oct. 4, 2011) (citations omitted).

Section 522(b)(2) authorizes states to opt out of the federal property exemptions enumerated in section 522(d).  11 U.S.C. § 522(b)(2).  Exercising this grant of authority, the North Dakota Legislature enacted a set of property exemptions for purposes of bankruptcy, limiting its residents to claiming the state exemptions rather than the federal exemptions.  See N.D.C.C. § 28-22-17.

Debtor exempted spousal support in the sum of $32,256 under N.D.C.C. § 28-22-03.1(8)(d).  This sum includes six payments of $1,215 as of the date of Debtor's

6

bankruptcy filing, six remaining payments of $1,215 until her son graduates and 18 payments of $1,387 after her son graduates.

Section 28-22-03.1(8)(d) provides that a resident may exempt her right to receive "[a]limony, support, or separate maintenance, but not property settlements, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." N.D.C.C. § 28-22-03.1(8)(d). Neither the North Dakota Century Code nor North Dakota caselaw define the phrase "reasonably necessary for the support" of the debtor and any dependent of the debtor under N.D.C.C. § 28-22-03.1(8)(d).

The North Dakota spousal support exemption mirrors the federal exemption under section 522(d)(10)(D) which provides an exemption for "alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor[.]" 11 U.S.C. § 522(d)(10)(D). Like the North Dakota Century Code, the Bankruptcy Code does not define the phrase "reasonably necessary for support."

The North Dakota exemption statute for retirement funds includes a definition of "reasonably necessary for the support," however. See N.D.C.C. § 28-22-03.1(7). This statute provides a dollar limit on the value of exempt retirement funds: "The dollar limit does not apply to the extent this property is reasonably necessary for the support of the resident and that resident's dependents." N.D.C.C. § 28-22-03.1(7). The statute further provides: "As used in this subsection, 'reasonably necessary for the support' means required to meet present and future needs, as determined by the court after consideration of the resident's responsibilities and all the present and anticipated property and income of the resident, including that which is exempt." N.D.C.C. § 28-22-03.1(7). Given the lack of a specific standard under N.D.C.C. § 28-22-03.1(8)(d) and

7

the ordinary sense definition under the North Dakota retirement funds exemption statute, the Court will look to the definition of "reasonably necessary for the support" under N.D.C.C. § 28-22-03.1(7) and apply it in this case.[3]

At the hearing, the Trustee identified two expenses that he argues are not reasonably necessary for Debtor's support—the $206.55 monthly expense for taxes on the spousal support payments and $50 of the monthly food expense.[4] The Court concludes that both of these expenses are reasonable. The tax Debtor is obligated to pay on spousal support is not discretionary. Unlike income tax withholding, the taxes on Debtor's income from spousal support are not withheld from Debtor's paycheck. Debtor's accountant determined the amount of the tax, and it is reasonable for her to budget for the taxes.

---

[3] See N.D.C.C. § 1-01-09 ("Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase whenever it occurs in the same or subsequent statutes, except when a contrary intention plainly appears"). Even if the Court did not find this definition applicable through section 1-01-09, the Court would employ this definition as the "ordinary sense" understanding of the phrase. See N.D.C.C. §§ 1-02-02 ("Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained."); 1-02-03 ("Words and phrases must be construed according to the context and the rules of grammar and the approved usage of the language. Technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law, or as are defined by statute, must be construed according to such peculiar and appropriate meaning or definition").

[4] In his written objection, the Trustee argued that Debtor's allocation of $460 per month in transportation costs and $325 per month to lease a 2016 Nissan Rogue were inflated and unreasonable. Doc. 11 at 2. After hearing Debtor's testimony regarding these expenses, he did not list them among those he asserts are not reasonably necessary for Debtor's support. Even if the Trustee had renewed his objection to these expenses, the Court finds that these expenses are both reasonable and necessary.

The Trustee also argues that "the debtor's monthly expenses are likely to drop substantially when her eldest child reaches the age of majority, and she is no longer responsible for his care." Id. The Court received no evidence regarding the "substantial drop in expenses" and rejects this argument as a basis to conclude that her current and anticipated expenses are "inflated."

8

As for the food expense, the Trustee asserts $50 of it is unreasonable because it exceeds the IRS guidelines referenced in section 707(b)(2)(A)(ii)(I) for the food expense for a family of three people by $50.[5] The Court found no authority for the proposition that it should consider the IRS guidelines when considering whether a spousal support payment is reasonably necessary for a debtor's support. Even if the IRS guidelines are an appropriate consideration in this context, neither party offered them as evidence. See In re Patrick, 411 B.R. 659, 670 (Bankr. C.D. Cal. 2008) (recognizing the difficulty of ascertaining the standard to use to determine reasonable expenses in a case involving a debtor who claimed IRA funds exempt as reasonably necessary for his support and noting that "[t]he IRS standards have become the darlings of Congress in recent years, so that might be a good place to start").

Debtor testified that she determined the food expenses she listed based on her actual expenses from the months preceding her bankruptcy. She explained that $25 to $30 of the $725 expense for food and housekeeping is for cleaning supplies and paper products and the rest is for food. The $695 to $700 monthly food expense does not include $150 per month for school lunches. Debtor testified that the family eats at home as often as possible and acknowledged she must avoid eating at restaurants to maintain her budget. After considering all the evidence received, the Court concludes that Debtor's expenses of $695 to $700 for food and $150 for school lunches is reasonable in this case. The Court further concludes that all of Debtor's expenses are reasonable and necessary given the circumstances of this case even if not specifically discussed in this Order.

---

[5] Although the Trustee initially resisted the application of the IRS guidelines in the hearing, he ultimately rooted his objection to Debtor's food expense in the amount of the IRS guideline.

According to her amended schedules, Debtor's monthly income exceeds her expenses by $72.45.  Her student loans are currently in deferment, however.  When the $200.16 monthly payments resume within the next year, her expenses will exceed her income.  She does not expect her income from her employment to increase, and the total sum of her spousal and child support payments will be reduced by $500 when her son turns 18 in few months.  Between the reduction in child support payments and the resumed student loan payments, Debtor's expenses will soon exceed her income by several hundred dollars per month.  Her spousal support payments are not only reasonably necessary for her support, they are critical for it.

The Trustee has not met his burden of establishing that Debtor's support payments are not reasonably necessary for her support.  Therefore, the Trustee's objection to Debtor's exemption of spousal support payments in the amount of $32,256 is OVERRULED.  The exemption is allowed.

The Court considered all other arguments and deems them to be without merit.

**SO ORDERED**

Dated this April 12, 2017.

*/s/ Shon Hastings*

**SHON HASTINGS, JUDGE
UNITED STATES BANKRUPTCY COURT**